IN IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| GREGORY MCKNIGHT, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GLR-23-2573 |
| ISAIAH MALONE, | * | |
| Defendant. | * | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Correctional Officer Isaiah Malone's Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 18). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2023). For the reasons outlined below, the Court will grant Malone's Motion, construed as a Motion for Summary Judgment.

### I.   BACKGROUND

**A.   McKnight's Allegations**

Self-represented Plaintiff Gregory McKnight, a state inmate currently at Patuxent Institution, alleges that on December 14, 2021, Correctional Officer Malone put him in a headlock, slammed him on the ground, choked him until he was almost unconscious, slammed his head against the floor like a basketball, and punched him in the face two times, in violation of his Eighth Amendment rights. (Compl. at 2–3, ECF No. 1).[1] McKnight

---

[1] Citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Case Files ("CM/ECF") system.

alleges that Officer Malone was escorting him back to his cell after a disciplinary hearing, when McKnight asked him to stop into the "ID room" to get a grievance form to file on the hearing officer. (Id. at 2). In response, Officer Malone "made a statement of 'you like writing grievances and pressing charges on correctional officers,'" before proceeding to assault McKnight. (Id. at 2–3). McKnight states that he was subsequently escorted to medical and given pain medication and an ice pack, and that he was given a ticket for assault. (Id. at 3). McKnight claims that he did not assault anyone, and that Officer Malone falsified the documents. (Id.). McKnight states that he did not file a grievance regarding the incident because "1) correctional officers would not sign any grievance because it was against one of their own; and 2) [McKnight] was on the psychiatric unit at the time [so] he could not have a pen." (Id. at 4).

**B.     Malone's Response**

Malone avers that on December 14, 2021, he was assigned to escort McKnight to the hearing room. (Malone Decl. ¶ 2, ECF No. 18-3). Because McKnight became "irate," he and Sgt. Edogiawerie escorted him out. (Id. ¶ 3). As they passed an ID room and supervisor's room, McKnight called Malone a "bitch" and directed him to take him to the ID room to get a money order. (Id.). When Malone said they would be going to the housing unit without stopping, McKnight "spat on [his] facemask, pulled away, and yelled at [him] again, saying that if [he] did not get the money order for him, 'I am going to fuck you up.'" (Id.). McKnight began to kick Malone, and Sgt. Edogiawerie and Malone "guided McKnight to the floor" while backup officers were called. (Id.). McKnight was escorted away after he stopped resisting. (Id.). Malone attests that "[a]t no time did I or anyone else

2

kick or punch McKnight, or slam McKnight's head on the ground . . . I did not say anything to McKnight about filing grievances or about his complaining about correctional staff" and further that "McKnight never talked with me about filing any ARPs, and never asked me to process any ARPs for him. I never spoke with him about any ARPs." (Id. ¶¶ 4–5). Sgt. Edogiawerie submitted a declaration that corroborates Officer Malone's account of the incident. (Edogiawerie Decl. ¶¶ 2–4, ECF No. 18-4).

Kristina Donnelly, Special Assistant to the Director of Patuxent Institution, declares that she conducted a search of ARP records, and found that McKnight did not file any ARPs regarding the incident on December 21, 2021. (Donnelly Decl. ¶ 2, ECF 18-5). Since 2009, McKnight has filed only one ARP, which was received in February of 2022. (Id. ¶ 4). Sheldon Alexander, McKnight's case manager during the relevant time period, attests that McKnight could have requested his assistance with filing ARPs at any time but that he has no recollection or record of any such requests. (Alexander Decl. ¶¶ 3–6, ECF No. 18-10).

Malone also submitted the records of the disciplinary proceedings against McKnight with regard to the incident as authenticated by Hearing Officer Scott Rowe. (Rowe Decl. ¶ 2, ECF 18-6; Notice of Inmate Rule Violation at 1, ECF 18-6).[2] On December 14, 2021, McKnight was charged with rule violations including engaging in a disruptive act, committing assault or battery on staff, making threats of physical harm, disobeying an

---

[2] ECF No. 18-6 contains four separate documents: (1) the Declaration of Scott Rowe; (2) a Notice of Inmate Rule Violation; (3) a Notice of Inmate Disciplinary Hearing; and (4) an Inmate Hearing Record. Citations to page numbers for these documents refers to the page numbers listed on the bottom right corner of each document.

order, demonstrating disrespect, insolence or use of vulgar language, and participating in reckless behavior or horseplay. (Notice of Inmate Rule Violation at 1). After a hearing, the hearing officer found the evidence to be reliable, and McKnight was found guilty of spitting in the officer's face shield, refusing a direct order, using vulgar language, and threatening bodily harm. (Compare Notice of Inmate Rule Violation at 1, with Inmate Hearing Record at 5, ECF No. 18-6). McKnight named inmate John Simkus as a witness, however Simkus declined to testify at the hearing. (Inmate Hearing Record at 2). McKnight was "removed from the hearing because he was being disruptive." (Id. at 5).

In response to a letter from McKnight complaining of the excessive force described in the Complaint, (Letter from McKnight at 1, ECF No. 18-8), the Department of Public Safety and Correctional Services (DPSCS) Intelligence and Investigative Division (IID) opened an investigation of the incident. (Brengle Decl. at 1, ECF No. 18-8; DPSCS IID Incident Report at 1, ECF 18-8). In addition to interviewing McKnight and obtaining his medical records, Detective Sgt. Roscoe Lewis interviewed inmate John Simkus, whom McKnight names as a witness to the incident. (DPSCS IID Incident Report at 4; Lewis Decl. ¶¶ 1–2, ECF No. 18-7). Simkus stated that he remembered the incident but that he did not see staff assault McKnight. (DPSCS IID Incident Report at 4). Simkus recalled that McKnight was being "uncooperative" and he "was taken to the floor and restrained." (Id.). He stated that "none of the officers struck, punched or kicked Inmate McKnight." (Id.; Lewis Decl. ¶ 3). The investigator was unable to interview Malone, as he was on administrative leave for an unrelated reason and was unreachable. (Id.). The IID investigation concluded that no criminal charges would be filed, because McKnight

4

admitted he was "acting belligerently toward staff," and because Inmate Simkus witnessed the event and denied that officers assaulted McKnight. (Id. at 5).

Finally, Defendants submitted McKnight's medical records under seal, (ECF No. 18-9), and McKnight submitted a copy of his medical record from the date of the incident, (ECF No. 10), which is included in the records submitted by Defendants, (Certified Medical Records at 11–13, ECF No. 18-9). The record submitted by McKnight indicates that on December 14, 2021, he was seen by Patience A. Musong, RN after an "altercation with custody." (Medical Information at 2, ECF No. 10). The record notes that McKnight was combative and stated that he was "'angry.'" (Id.). Musong found swelling on the left side of the head and cheek, but no bruising, abrasion, tenderness or discoloration. (Id.). McKnight was given a cold compress and advised to continue his medications, which included Tylenol. (Id. at 3).

**C.    Procedural History**

On September 23, 2023, McKnight filed his Complaint against Correctional Officer Malone and Patuxent Institution, in which he alleged violations of his Eighth Amendment rights. (Compl. at 2–3). On November 27, 2023, this Court dismissed Patuxent Institution as a Defendant. (ECF No. 9). On December 8, 2023, McKnight filed medical records that were docketed as a Supplement to the Complaint. (ECF No. 10). McKnight seeks monetary damages. (Compl. at 5).

In response to the Complaint, Malone filed a Motion to Dismiss or, in the Alternative, for Summary Judgment on March 18, 2024. (ECF No. 18). McKnight filed an Opposition on May 20, 2024. (ECF No. 20). Malone filed a Reply on June 3, 2024,

including the Supplemental Declaration of Officer Edogiawerie and Declaration of Warden Laura Armstead. (ECF Nos. 21, 21-1, 21-2).[3] On June 14, 2024, McKnight filed a document styled as "Motion for Clarification," which provides additional case law and arguments. (ECF No. 22). Malone filed a Motion to Strike McKnight's Motion for Clarification on June 27, 2024, arguing that the Motion for Clarification is best construed as an unauthorized surreply. (Mot. Strike at 1–2, ECF No. 23).[4]

---

[3] In his Opposition, McKnight claims that he was denied adequate medical care because he was not x-rayed and was not taken to the hospital or to see a specialist. (Pl.'s Mem. Resp. Opp'n Def.'s Mot. at 9, ECF No. 20). To the extent that McKnight intended to state a claim for inadequate medical care, the claim fails. McKnight does not attribute the alleged medical failures to Malone or any other individual nor is there sufficient detail to state a claim.

[4] The Court will deny both McKnight's Motion for Clarification, (ECF No. 22), and Malone's Motion to Strike, (ECF No. 23). McKnight's Motion for Clarification is best construed as a Motion for Leave to File a Surreply. Surreply memoranda are not permitted to be filed absent an order by this Court. See Local Rule 105.2(a) (D.Md. 2016). "Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." Khoury v. Meserve, 268 F. Supp. 2d 600, 605 (D.Md. 2003) aff'd, 85 F. App'x 960 (4th Cir. 2004) Here, McKnight's Motion consists largely of case citations and arguments previously raised. Where the proposed surreply is simply a rehash of what has already been presented in previously filed responsive pleadings, leave to file a surreply is appropriately denied. Cf. MTB Services, Inc. v. Tuckman-Barbee Const. Co., No. RDB-12-02109, 2013 WL 1224484, at *6 (D.Md. Mar. 26, 2013). Therefore, McKnight's Motion for Clarification, construed as a Motion for Leave to File a Surreply, will be denied and the contents are not considered here. Further, because the Court will not consider McKnight's Motion for Clarification, the Court finds that there is no prejudice to Malone to justify granting his Motion to Strike, (ECF No. 23). See Asher & Simons, P.A. v. j2 Glob. Canada, Inc., 965 F.Supp.2d 701, 705 (D.Md. 2013), on reconsideration in part, 977 F.Supp.2d 544 (D.Md. 2013) (noting that Rule 12(f) motions are disfavored and generally require the moving party to establish that the materials to be struck prejudice the moving party in some way). Accordingly, the Court will also deny Malone's Motion to Strike, (ECF No. 23).

## II.     DISCUSSION

### A.     Standard of Review

#### 1.     Conversion

Malone's Motion is styled as a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for Summary Judgment under Federal Rule of Civil Procedure 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court has "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on

7

notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005) (citing Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260–61 (4th Cir. 1998)).

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d).

"The Fourth Circuit places 'great weight' on the affidavit requirement." Nautilus Ins. Co. v. REMAC Am., Inc., 956 F.Supp.2d 674, 683 (D.Md. 2013) (quoting Evans, 80 F.3d at 961). However, non-compliance may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary." Harrods, 302 F.3d at 244. Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." Id. at 247. (quoting 10B

8

Wright, Miller & Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)) (internal quotation marks omitted).

Nonetheless, a Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trustees, 55 F.3d 943, 954 (4th Cir. 1995)).

Here, the notice requirement has been satisfied by the title of Malone's Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d); see Harrods, 302 F.3d at 244–45. Although McKnight has replied to the Motion, he has not asserted that discovery is necessary, and thus the Court will convert the Motion into a motion for summary judgment.

### 2.     **Summary Judgment**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of

9

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2). Supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence." Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing that there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co., LLC v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citations omitted). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" dispute concerning a "material" fact arises when the

evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.   Analysis**

Malone has moved for dismissal, or alternatively, for summary judgment in his favor. (Def.'s Mem. Supp. Mot. Dismiss Alternative Mot. Summ. J. ["Mot."], ECF No. 18-1). He argues that: (1) the Eleventh Amendment bars suit against Malone in his official capacity; (2) McKnight has failed to exhaust his administrative remedies and thus his claims are barred by the Prison Litigation Reform Act ("PLRA"); (3) McKnight failed to state a claim for either falsifying records or excessive force; and (4) Malone is entitled to qualified immunity. (Id. at 9–20). After reviewing the record, it is unclear whether McKnight was prevented from exhausting his administrative remedies. However, the evidence viewed in the light most favorable to McKnight demonstrates that Malone did not use excessive force against him; therefore, Malone's Motion will be granted.

   **1.   Exhaustion of Administrative Remedies**

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison

conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); see also Chase v. Peay, 286 F.Supp.2d 523, 527–28 (D.Md. 2003), aff'd, 98 F.App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading standard on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. See Jones v. Bock, 549 U.S. 199, 216 (2007). A claim that has not been exhausted may not be considered by this Court. Id. at 220. In other words, exhaustion is mandatory, and a court usually may not excuse an inmate's failure to exhaust. See Ross v. Blake, 578 U.S. 632, 637-40 (2016).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. Moore v. Bennette, 517 F.3d 717, 725, 729 (4th Cir. 2008); see also Langford v. Couch, 50 F.Supp.2d 544, 548 (E.D.Va. 1999) ("The second PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." Woodford v. Ngo, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" Id. at 90 (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). But the Court is "obligated to ensure that any defects in [administrative]

12

exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the IGO against any Division of Correction ("DOC") official or employee. Md. Code Ann., Corr. Servs. § 10-206(a). However, to have a grievance approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO. See id. § 10-206(b). Inmates housed at an institution operated by the Department of Public Safety and Correctional Services ("DPSCS") may avail themselves of the administrative grievance process designed for inmate complaint resolution. See generally Id. § 10-201 et seq.; Md. Code Regs. ("COMAR") 12.07.01.01B(1) (defining an ARP).

A prisoner in a DOC institution must file an ARP with her facility's managing official within thirty days of the date on which the incident occurred, or within thirty days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B). If the managing official denies the ARP, the prisoner has thirty days to file an appeal with the Commissioner of Correction. Id. 12.02.28.14(B)(5). If the Commissioner of Correction denies the appeal, the prisoner has thirty days to file a grievance with the IGO. Id. 12.02.28.18. The prisoner must include in the grievance copies of the initial request or administrative remedy, the Warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. Id. 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. Md. Code Ann., Corr. Servs. § 10-207(b)(1); see also COMAR

13

12.07.01.07(B). An order of dismissal constitutes the final decision of DPSCS for purposes of judicial review. Md. Code Ann., Corr. Servs. § 10-207(b)(2)(ii). An inmate has not exhausted her administrative remedies until she has pursued her grievance through all levels. See Woodford, 548 U.S. at 90; see also Gibbs v. Bureau of Prisons, 986 F.Supp. 941, 943–44 (D.Md. 1997).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In Ross, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." Ross, 578 U.S. at 635. In particular, it rejected a "special circumstances" exception to the exhaustion requirement but reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" Id. at 635–36. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725.

The Ross court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. (citing Booth v. Churner, 532 U.S. 731, 736 (2001)). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. at 643–44. The third circumstance arises when "prison administrators thwart

14

inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

Here, McKnight alleges that he was unable to file an ARP regarding the alleged assault because he did not have a pen due to being in a psychiatric unit, and because officers would not give him a form. (Compl. at 4). Malone submitted evidence showing that McKnight could have but did not ask his case manager for help in filing a grievance. (Alexander Decl. ¶ 2–3). In response, McKnight contends that corrections staff would not sign his ARPs, so he sent one directly to DPSCS. (Pl.'s Mem. Resp. Opp'n Def.'s Mot. [Opp'n] at 5, ECF No. 20). McKnight does not provide specifics regarding any attempts to acquire a grievance form or a pen; therefore, it is not clear that he was prevented from filing an ARP. However, DPSCS did receive a letter from McKnight, which resulted in an IID investigation. (See Letter from McKnight at 1; DPSCS IID Incident Report at 1). The letter may corroborate McKnight's allegation that he chose to send an ARP to DPSCS because he was prevented from filing one at his institution. Based on this conflicting evidence, it is not clear that McKnight's administrative remedies were available to him. Therefore, the Court will not grant Malone's Motion on that basis.

### 2. Eighth Amendment

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment is violated when an inmate is subjected to "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429

15

U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). To establish an Eighth Amendment violation, an inmate must demonstrate that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. Williams, 77 F.3d at 761. As to the subjective element, an inmate must show that the guards used force "maliciously and sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320–21 (1986)). In assessing this element, a court should consider: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat;" and "(4) any efforts made to temper the severity of a forceful response." Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008) (quoting Whitley, 475 U.S. at 321).

Regarding the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. Wilkins v. Gaddy, 559 U.S. 34, 39 (2010). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 37 (quoting Hudson, 503 U.S. at 9). Although inmates must show the application of nontrivial force, an Eighth Amendment violation can occur even if that force did not cause serious injury. Id. at 38 ("[A]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of

16

decency always are violated." Hudson, 503 U.S. at 9. The extent to which injuries are modest is accounted for in the award of damages. See Wilkins, 559 U.S. at 40.

Even viewed in the light most favorable to McKnight, the evidence shows that Malone did not use excessive force against him as described in the Complaint. The parties agree that there was an altercation while Malone was escorting McKnight back to his cell following a disciplinary hearing. (Mot. at 3; Opp'n at 2). McKnight claims that he asked Malone to stop at an office so he could obtain an ARP form; Malone claims that McKnight asked to stop for a money order form. (Opp'n at 2; Malone Decl. ¶ 3). Regardless of the reason for the requested stop, the parties also agree that a dispute occurred when Malone declined McKnight's request. (Opp'n at 2; Malone Decl. ¶ 3). McKnight's unverified claims regarding what happened next, that Malone immediately put him in a headlock, slammed him on the ground, choked him until he was nearly unconscious, and repeatedly slammed his head against the ground, are not credible in light of the evidence submitted by Malone. (Opp'n at 2–3). The escorting officers, Malone and Edogiawerie, both attest that Malone did not assault McKnight. (Malone Decl. ¶ 4; Edogiawerie Decl. ¶¶ 3–4). They made similar statements as part of the disciplinary hearing process and the IID investigation. (DPSCS IID Incident Report at 3–5). Additionally, the witness that McKnight claimed could corroborate his account, inmate John Simkus, declined to testify at the disciplinary hearing and reported to IID Investigator Roscoe Lewis that Malone did not assault McKnight. (Id. at 4). Moreover, the medical records show that McKnight was seen after the incident with minor injuries that do not comport with his description of the events. (Certified Medical Records at 11; Medical Information at 2). McKnight presents

17

no evidence outside his unverified statements to support his allegations. Without factual support, he argues that the officers' and Simkus's statements were falsified and the medical records "minimized" his injuries. (Opp'n at 2, 4, 9). McKnight's unverified allegations of excessive force and unsupported allegations of falsified records are not credible when weighed against the numerous attestations that Malone did not assault McKnight. Therefore, Malone is entitled to summary judgment in his favor.[5]

### III. CONCLUSION

For the foregoing reasons, the Court will grant Malone's Motion to Dismiss or, in the Alternative, for Summary Judgment, (ECF No. 18), construed as a Motion for Summary Judgment. The Court will deny McKnight's Motion for Clarification, (ECF No. 22), construed as a Motion for Leave to File a Surreply. And the Court will deny Malone's Motion to Strike, (ECF No. 23). A separate Order follows.

Entered this 17th day of March, 2025.

/s/
George L. Russell, III
Chief United States District Judge

---

[5] The Court need not reach Malone's argument that he is entitled to qualified immunity because the Court has already found that he is entitled to summary judgment as to McKnight's claims. In any event, "qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Crouse v. Town of Moncks Corner, 848 F.3d 576, 583 (4th Cir. 2017) (alteration in original) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). To overcome an official's qualified immunity defense, a plaintiff must establish: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). Because McKnight does not establish a violation of a statutory or constitutional right, he cannot overcome Malone's qualified immunity defense.